UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MICHELLE CASSEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:24-cv-00406-JPH-MKK |
| | ) |
| HUNTER GIVENS Officer, | ) |
| CARL WASSBERG Officer, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' UNOPPOSED
MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Michelle Cassel alleges that police officers Hunter Givens and

Carl Wassberg violated her Fourth Amendment rights during a traffic stop and

vehicle search.  The Defendants have filed motions for summary judgment.

Dkts. [60], [64].  For the reasons below, those unopposed motions are

**GRANTED.**

**I.
Facts and Background**

Because Defendants have moved for summary judgment under Rule

56(a), the Court views and recites the evidence "in the light most favorable to

the non-moving party and draw[s] all reasonable inferences in that party's

favor."  *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).  Here, Ms. Cassel

has not responded to the summary judgment motions, so the Court treats

Defendants' supported factual assertions as uncontested.  *See Hinterberger v.*

*City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020); S.D. Ind. L.R. 56-1(b),

(f).

1

In June 2023, Indiana State University Police Officer Hunter Givens initiated a traffic stop after seeing that Ms. Cassel had a phone in her hand while driving. Dkts. 61-2 at 00:40 (Givens body cam); 65-1 at 1 ¶¶ 4–5 (Givens Aff.). Officer Givens approached the vehicle and told Ms. Cassel what he saw; she responded that she "was just moving [the phone]." Dkt. 61-2 at 00:30–00:45. She then told Officer Givens that she jointly owned her vehicle with her fiancé, Derek. *Id.* at 1:00–2:45.

Officer Givens returned to his squad car and confirmed that the vehicle was jointly registered to Ms. Cassel and Derek Chiado. *Id.* at 3:56–4:40. An online search revealed that Mr. Chiado had a recent arrest for drug-related activities. *Id.* at 4:42–5:00; dkt. 65-1 at 2–3 ¶¶ 17–18. Officer Givens then asked dispatch to check Ms. Cassel's information and was told her license was "clear and valid." Dkt. 61-2 at 5:06–5:54. Officer Givens next called West Terre Haute Police Officer Carl Wassberg—a K9 handler—and inquired about Mr. Chiado. *Id.* at 5:55–7:30; dkt. 65-1 at 3 ¶ 19. Officer Givens then asked if Officer Wassberg was nearby, and Officer Wassberg said that he would head to the scene. Dkt. 61-2 at 7:23–7:30. The call lasted about a minute and a half. *Id.* at 5:55–7:30. Officer Givens continued to process the traffic stop by entering information in his in-car system. Dkt. 61-2 at 7:30–13:32.

Officer Wassberg arrived six minutes later and approached Ms. Cassel's vehicle. *Id.* at 13:32–13:55. He "observed that the interior of the vehicle contained a significant amount of loose and miscellaneous items scattered throughout the vehicle." Dkt. 61-1 at 4 ¶ 21 (Wassberg Aff.). "Based on [his]

2

training and experience, a cluttered vehicle interior presents officer-safety concerns, including reduced visibility and possibility that weapons or other dangerous items may be concealed or readily accessible by the driver." *Id.* at ¶ 23.  He therefore asked Ms. Cassel multiple times to exit the vehicle, but she refused.  Dkt. 61-3 (Cassel recording).

Officer Givens and Officer Wassberg then removed Ms. Cassel from the vehicle.  *Id.*; dkt. 61-2 at 15:42–16:08.  Ms. Cassel physically resisted the officers' attempts to place her hands behind her back.  *Id.*  Officer Givens handcuffed Ms. Cassel and put her in his squad car.  *Id.* at 16:20–16:30.

Officer Wassberg brought his K9 to conduct a free-air sniff of the exterior of Ms. Cassel's vehicle.  *Id.* at 17:12; dkt. 61-1 at 5 ¶ 33.  During the sniff, the K9 sat near the driver's side door, which Officer Wassberg recognized as an alert to the odor of narcotics.  Dkt. 61-1 at 5–6 ¶ 34.  Officer Wassberg rewarded the K9 with a tennis ball.  *Id.* at 6 ¶ 35.  Based on the alert, both officers searched Ms. Cassel's vehicle, but they did not locate any narcotics. Dkts. 61-2 at 18:10–28:00; 61-1 at 6 ¶¶ 36–37.  Ms. Cassel was arrested for resisting law enforcement and cited for distracted driving.  Dkt. 61-1 at 6 ¶ 38.

Ms. Cassel filed this action alleging that Defendants violated her Fourth Amendment rights. Dkt. 1.  Defendants moved for summary judgment.  Dkts. 60, 64.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

3

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor."  *Zerante*, 555 F.3d at 584 (citation omitted).  A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c); it need not "scour the record" for evidence that might be relevant.  *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017).

Ms. Cassel has not responded to the summary judgment motions, and the deadline to do so has passed.  When a summary judgment motion is unopposed, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record.  S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts).  "Even where a non-movant fails to respond to a motion for summary judgment, the movant still ha[s] to show that summary judgment [is] proper given the undisputed facts."  *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021).

### III.
### Analysis

Under the Fourth Amendment, "[the] right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  Ms. Cassel did not identify her Fourth Amendment theories of liability in her complaint, so Defendants have moved for summary judgment on several theories.  *See* dkts. 65 at 8–15 (addressing claims against Officer Givens based on the length of the stop,[1] ordering Ms. Cassel out of the vehicle, the vehicle search, and Ms. Cassel's arrest); 60 at 8–15 (addressing claims against Officer Wassberg based on ordering Ms. Cassel out of the vehicle, use of force, and the K9 sniff and vehicle search).  Because Ms. Cassel did not respond to Defendants' motions, the Court also addresses those Fourth Amendment theories.  *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("In our adversarial system of adjudication we follow the principle of party presentation.").

For each argument, Officers Givens and Wassberg contend that they did not violate Ms. Cassel's Fourth Amendment rights and, regardless, are entitled to qualified immunity.  Dkts. 61 at 8–17; 65 at 9–17.

#### A. Qualified immunity standard

"Government officials enjoy qualified immunity from suit under § 1983 unless their conduct violates clearly established law."  *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026).  In other words, "officers are entitled to qualified immunity . . .

---

[1] Ms. Cassel's complaint did not dispute that Officer Givens had probable cause to initiate a traffic stop.  Dkt. 1 at 3.

unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018); *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (noting that courts may address either prong first).

"A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Zorn*, 146 S. Ct. at 930. In other words, existing precedent must place the constitutional question "beyond debate." *Id.* "The relevant precedent must define the right with a high degree of specificity, so that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* (A clearly established right generally requires "a case where an officer acting under similar circumstances was held to have violated the Constitution."). "In short, officers receive qualified immunity unless they could have read the relevant precedent beforehand and know[n] that it proscribed their specific conduct." *Id.*; *see also Mullenix v. Luna*, 577 U.S. 7, 15 (2015).

Qualified immunity is analyzed defendant-by-defendant and claim-by-claim. *Mabes v. Thompson*, 136 F.4th 697, 706 (7th Cir. 2025). The plaintiff bears the burden of showing "clearly established law . . . particularized to the facts of the case." *Id.* Meeting that burden "is a 'do or die' requirement for the plaintiff's suit. If a plaintiff fails to identify analogous precedent clearly establishing the law, the district court must grant summary judgment for the defendant." *Villalobos v. Picicco*, 168 F.4th 1057, 1063 (7th Cir. 2026); *accord Thomas v. Carmichael*, 164 F.4th 1058, 1067 (7th Cir. 2026).

## B. Length of stop

"The Fourth Amendment may tolerate certain unrelated investigations that do not lengthen the roadside detention, but a traffic stop become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a . . . ticket." *Rodriguez v. United States*, 575 U.S. 348, 349 (2015); *Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("[Unrelated] inquiries [may] not measurably extend the duration of the stop."). Officer Givens argues that he is entitled to qualified immunity on any claim that he unconstitutionally prolonged the stop because "precedent would not have placed [him] on notice that any of his conduct would be considered 'unrelated' to the traffic stop or impermissibly prolonging the stop." Dkt. 65 at 13. The Court exercises its discretion to begin with the "clearly established law" prong of the qualified-immunity test. *See Leiser*, 933 F.3d at 701.

Here, the undisputed designated evidence is that Officer Givens ran a brief search on Mr. Chiado and called Officer Wassberg for about a minute and a half to ask about Mr. Chiado, then Officer Wassberg arrived on the scene six minutes later. Dkt. 61-2 at 4:42–7:30, 13:32. The initial searches and calls took less than three minutes, which overlapped with inquiries about Ms. Cassel that were related to the purpose of the stop. Dkt. 61-2 at 4:42–7:30; *see Rodriguez*, 575 U.S. at 355. And the six minutes it took Officer Wassberg to arrive didn't prolong the stop because Officer Givens continued to process Ms. Cassel's citation during that time. Dkts. 61-2 at 7:30–13:32, 16:50–17:25; 65 at 5 ¶ 24 (noting that it typically takes Officer Givens 5–10 minutes to create a

7

traffic citation). Because Ms. Cassel did not respond to the summary judgment motions, she has not identified precedent "squarely govern[ing]" the facts in the uncontested designated evidence or shown that the stop length violated clearly established law. *See Mullenix*, 577 U.S. at 15; *see also Childs*, 277 F.3d at 954.[2] Officer Givens' motion for summary judgment is therefore **GRANTED** on this claim.

### C. Removing Ms. Cassel from the vehicle

"[O]fficers may, consistent with the Fourth Amendment, exercise their discretion to require a driver who commits a traffic violation to exit the vehicle even though they lack any particularized reason for believing the driver possesses a weapon." *New York v. Class,* 475 U.S. 106, 115–16 (1986); *see Pennsylvania v. Mimms*, 434 U.S. 106, 110–111 (1977) (holding that "legitimate and weighty" concerns for officer safety outweighed the "*de minimis*" intrusion of requiring a driver to exit a vehicle). Both officers argue that they are entitled to qualified immunity on any claim about their removal of Ms. Cassel from her vehicle. Dkts. 61 at 8–11, 16; 65 at 13–14, 16. The Court opts to begin with the "clearly established law" prong of the qualified-immunity test. *See Leiser*, 933 F.3d at 701.

The uncontested designated evidence is that Officer Wassberg walked up to Ms. Cassel's vehicle and noticed that "the interior . . . contained a significant amount of loose and miscellaneous items scattered throughout the vehicle,"

---

[2] Once Officer Wassberg's K9 alerted, that provided an independent basis to continue the stop. *See Pennsylvania v. Mimms*, 434 U.S. 106, 110–111 (1977).

which "presents officer-safety concerns."  Dkt. 61-1 at 4 ¶¶ 21, 23.  Officer Wassberg repeatedly ordered Ms. Cassel to exit the vehicle, but she refused. Dkt. 61-3.  Officer Givens then returned from his squad car, Officer Wassberg opened the car door, and the officers removed Ms. Cassel from the vehicle. Dkt. 61-2 at 15:42–16:08.

Officer Wassberg therefore ordered Ms. Cassel to exit the vehicle due to articulated safety concerns related to the state of her vehicle, while Officer Givens was processing her citation.  Dkt. 61-1 at 4 ¶¶ 21, 23 (Wassberg Aff.); 65-1 at 3 ¶ 26 (Givens Aff.).  Ms. Cassel has not cited any clearly established law demonstrating that it was unlawful for the officers to remove her from her vehicle in this situation.  *See Mimms*, 434 U.S. at 110–111; *Smith v. Ball State Univ.*, 295 F.3d 763, 770 (7th Cir. 2002) (When a driver refuses to exit their vehicle, an officer is "justified in using force to remove [her]."); *Villalobos*, 168 F.4th at 1063 (stating that the plaintiff's burden to identify clearly established law "is a 'do or die' requirement").  Defendants' motion for summary judgment is therefore **GRANTED** as to this claim.

### D. Restraining Ms. Cassel

Excessive force claims turn on "whether the officers' actions [were] objectively reasonable in light of the facts and circumstances confronting them."  *Graham v. Connor,* 490 U.S. 386, 397 (1989).  Officer Wassberg argues that he is entitled to qualified immunity on any excessive force claim.  Dkt. 61 at 15–17.  The Court elects to begin with the "clearly established law" prong of qualified immunity.  *See Leiser*, 933 F.3d at 701.

The undisputed designated evidence shows that Ms. Cassel physically resisted having her hands placed behind her back, and the officers then forced her hands behind her back to place her in restraints.  Dkt. 61-2 at 15:42–16:30.  As explained above, an officer is "justified in using force to remove" a driver who refuses to exit her vehicle.  *Smith*, 295 F.3d at 770; *accord Padula v. Leimbach*, 656 F.3d 595, 603 (7th Cir. 2011) (the officers "were entitled to forcibly remove [the plaintiff] from his car when he did not comply with their command to get out on his own").  Against that standard, Ms. Cassel has not cited authority showing that Officer Wassberg's use of force to restrain her violated clearly established law.  *See Padula*, 656 F.3d at 603 (rejecting excessive force argument when plaintiff "fell to the ground as dead weight" after removal from the car); *Smith*, 295 F.3d at 770 ("When police officers face what is essentially a fluid situation, they are entitled to graduate their response to meet the demands of the circumstances confronting them."); dkt. 61-1 at 4–5 ¶¶ 21–25, 30 (noting Ms. Cassel's physical resistance and potential for hidden weapon).  Officer Wassberg's motion for summary judgment is **GRANTED** as to this claim.

### E.  K9 deployment & vehicle search

A dog sniff during a lawful stop does not violate the Fourth Amendment, even without reasonable suspicion of drugs, unless the sniff prolongs the stop beyond the time reasonably necessary to accomplish the purpose of the stop. *See United States v. Lewis*, 920 F.3d 483, 491 (7th Cir. 2019).  Officer Wassberg argues that he's entitled to qualified immunity for the deployment of

10

his K9, and both officers argue that they are entitled to qualified immunity regarding the subsequent search of Ms. Cassel's vehicle. Dkts. 61 at 15–17; 65 at 16–17. The Court addresses the "clearly established law" prong of qualified immunity. *See Leiser*, 933 F.3d at 701.

The undisputed designated evidence is that Officer Wassberg brought his K9 alongside Ms. Cassel's vehicle after she was apprehended, and the dog promptly sat down next to the driver's side door. Dkts. 61-2 at 17:12; dkt. 61-1 at 5 ¶ 33. Officer Wassberg recognized that behavior as an alert to the odor of narcotics, and the officers proceeded to search Ms. Cassel's vehicle. Dkts. 61-1 at 5–6 ¶ 34; 61-2 at 18:10–28:00.

Ms. Cassel hasn't identified any precedent suggesting that Officer Givens unreasonably prolonged the stop before Officer Wassberg arrived, or that a dog sniff unreasonably prolongs a stop when the K9 alerts within seconds of approaching the vehicle. Dkt. 61-2 at 17:12; *see Rodriguez*, 575 U.S. at 354–57. Officer Wassberg is therefore entitled to qualified immunity on any claim that he violated Ms. Cassel's Fourth Amendment rights by deploying the K9.

Once a properly trained dog alerts to the odor or presence of drugs, officers have probable cause to search a vehicle. *See United States v. Simon*, 937 F.3d 820, 833 (7th Cir. 2019). Here, the designated evidence is that the K9 was "trained and certified through an accredited canine training and certification program," exhibited behavior consistent with a positive alert, and was rewarded with a tennis ball. Dkts. 61-2 at 17:12; 61-1 at 2 ¶¶ 6, 34, 35. Ms. Cassel identifies no precedent clearly establishing that, under those facts,

11

"every reasonable [officer] would have understood" that searching her vehicle was unlawful.[3]  *See Zorn*, 146 S. Ct. at 930.  Defendants are therefore entitled to qualified immunity, and their motions for summary judgment are **GRANTED** as to these claims.

### F. Arrest

Officer Givens argues that he is entitled to qualified immunity on any claim about his arrest of Ms. Cassel for resisting law enforcement.  Dkt. 65 at 14–17 (citing Ind. Code § 34-44.1-3-1(a)(1)).  The Court begins with the "clearly established law" prong of the qualified-immunity test.  *See Leiser*, 933 F.3d at 701.

In Indiana, it is a crime to forcibly resist, obstruct, or interfere with a law enforcement officer who is lawfully engaged in the execution of their duties.  *See* Ind. Code § 34-44.1-3-1(a)(1).  For example, in *New v. State*, the plaintiff was convicted of resisting law enforcement after attempting to return to her vehicle multiple times against police orders and struggling with an officer when he attempted to place her in handcuffs.  *See* 135 N.E.3d 619, 621–22, 625 (Ind. Ct. App. 2019) ("An overwhelming or extreme level of force is not required; rather, forcible resistance may be satisfied with even a modest exertion of strength, power, or violence."); *accord Williams v. State*, 959 N.E.2d 357, 358–59 (Ind. Ct. App. 2011).  Against this precedent, Ms. Cassel has not shown that

---

[3] Though Ms. Cassel suggests in her complaint that the officers "utilized the dog's tennis ball in order to . . . feign a positive alert," dkt. 1 at 9, the undisputed designated evidence shows that the K9 sat down next to the driver's side door *before* Officer Wassberg took out the tennis ball.  Dkt. 61-2 at 17:12–17:29.

12

it was "clearly established" that Officer Givens lacked probable cause to arrest her for resisting law enforcement after she physically resisted being put in handcuffs.  Dkts. 61-2 at 15:42; 61-3 (Cassel recording).  Officer Givens' motion for summary judgment is therefore **GRANTED** as to this claim.

**V.**
**Conclusion**

Defendants' motions for summary judgment are **GRANTED.**  Dkts. [60], [64].  Final judgment shall issue by separate entry.

**SO ORDERED.**

Date: 7/28/2026

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MICHELLE CASSEL
3660 San Mateo Circle
Corona, CA 92882

All electronically registered counsel